**In re Ray KANGARLOO and Homa Kangarloo, Debtors.**

**Ray Kangarloo and Homa Kangarloo, Plaintiffs,**

**v.**

**Michael Arotionians, Defendant.**

**Bankruptcy No. SV00–11935–AG. Adversary No. 00–01160.**

United States Bankruptcy Court, C.D. California.

June 23, 2000.

Joanna M. Curtis, Price & Associates, Encino.

Ray and Homa Kangarloo, Sun Valley.

Michael Arotionians, c/o Henrik Mosesi, Law Offices of Henrik Mosesi, Glendale.

Amy Goldman, Trustee, Lewis, D'Amato, Brisbois & Brisgard, Los Angeles.

United States Trustee, Los Angeles.

## MEMORANDUM OF DECISION

ARTHUR M. GREENWALD,
Bankruptcy Judge.

### NATURE OF THE PROCEEDINGS

Debtors, Ray Kangarloo and Homa Kangarloo ("the Kangarloos"), move the court for entry of default judgment on their Complaint to Disgorge Profits and for Damages against Michael Arotionians, seeking damages and attorney's fees pursuant to 11 U.S.C. § 110. The complaint was filed on March 17, 2000, and, along with the summons, was served on Arotionians on the same day. The time for filing an answer or other responsive pleading expired on April 17, 2000. Arotionians has failed to file an answer or responsive pleading. On April 20, 2000, the default was entered, resulting in the Kangarloos filing the instant motion, which was submitted without hearing.

### STATEMENT OF FACTS

On August 3, 1999, Ray Kangarloo ("Kangarloo") contacted Arotionians for the purpose of filing a Chapter 7 bankruptcy petition. Arotionians maintained that he was an attorney and that he worked for the Law Office of Brian W. Kellogg ("law offices"). He provided Kangarloo with a business card on which his name was printed, along with the name, address and telephone number of the law offices. The business card did not specify any occupational title, position or function for Arotionians.

Arotionians told Kangarloo that he would prepare and file the bankruptcy petition and that he would represent the Kangarloos at the 341(a) meeting of creditors. Arotionians indicated that the fee for these services would be $675 and that the case could not be filed until Arotionians was paid in full. Arotionians also requested that Kangarloo provide him with copies of their bills. Kangarloo then remitted a check in the amount of $300 to

Arotionians, which cleared on August 4, 1999.

On August 21, 1999, Kangarloo brought copies of the bills to Arotionians. He told Kangarloo that he would write letters to each creditor, and that the Kangarloos should begin referring their creditors to him. At that meeting, Kangarloo remitted another check in the amount of $375, which cleared on August 23, 1999.

Approximately one month later, Kangarloo contacted Arotionians to find out if he had prepared the bankruptcy petition and schedules. Arotionians indicated that he had not completed the preparation of the documents. On or about September 25, 1999, the Kangarloos went to the law offices to meet with Arotionians and sign the documents. There was signage at the office indicating that it was the location of the Law Offices of Brian W. Kellogg. Arotionians presented the petition and schedules for the Kangarloos' signatures, explaining the meaning of each document. Arotionians advised the Kangarloos that it was not necessary for them to list their residence on the schedules, as they intended to retain the residence. The Kangarloos were not provided with copies of the signed documents.

During this period, the Kangarloos continued to receive calls from creditors who had been unable to reach Arotionians. In early October, 1999, Kangarloo attempted to contact Arotionians at least twice a day to correct the matter. When Arotionians finally returned Kangarloo's calls about a week later, he informed Kangarloo that the calls from the creditors were normal and should be expected.

Subsequently, the Kangarloos made numerous unsuccessful attempts to obtain a file number and a copy of the petition and schedules. At one point, Arotionians told the Kangarloos to come to the law offices to obtain the case file number. However, Arotionians failed to appear for the meeting. On or about October 16, 1999, the Kangarloos appeared at the law offices, and were told by Arotionians that he did not have a case number, but would fax it to them when he acquired one. On or about November 4, 1999, Arotionians did provide a case number to the Kangarloos' daughter, advising her that the case had been filed on October 28, 1999. However, he refused to provide the Kangarloos with a copy of the petition and schedules, contending that they had agreed with him initially that they would not receive copies of these documents.

On February 18, 2000, Kangarloo retained the law firm of Price & Associates ("Price") to investigate whether a bankruptcy case had been filed on behalf of the Kangarloos. They authorized Price to file a Chapter 7 bankruptcy petition on their behalf, in the event that no case had been filed. Finding that no case had been filed, Price filed a petition and schedules on February 25, 2000.

On March 17, 2000, the Kangarloos filed an adversary action against Arotionians, entitled "Complaint to Disgorge Profits and for Damages; 11 U.S.C. § 110." In their prayer for relief, the Kangarloos requested an award of damages pursuant to certain subsections of § 110. Specifically, they assert claims against Arotionians under subsection (d)(1) in the amount of $500.00, for failing to present the Kangarloos with a copy of the signed petition and schedules; (f)(1), in the amount of $500.00 for using a derivation of the word "legal" in his advertising; (g)(1), in the amount of $500.00 for collecting the court filing fee from the Kangarloos; and (h)(1), for collecting a fee without providing worth while services. In addition, the Kangarloos requested damages and reasonable attorney's fees and costs pursuant to 11 U.S.C. § 110(i)(1) totaling $5,550.

On March 22, 2000, Joanna M. Curtis, an attorney associated with Price & Associates, contacted Brian Kellogg, who stated that Arotionians was never in his employ, though from time to time he contracted with Arotionians regarding limited assignments.

Arotionians failed to answer the complaint or otherwise file a responsive pleading by the deadline of April 17, 2000. On April 20, 2000, Arotionians' default was entered, followed by the Kangarloos filing a motion for default judgment. In support of their motion, the Kangarloos submitted the declarations of Ray Kangarloo and Joanna Curtis. Attached to the motion were photocopies of a business card bearing the name of Michael Arotionians, as well as two canceled checks, payable to Michael Arotionians. The checks were issued by Ray Kangarloo, one dated August 3, 1999, in the amount of $300.00, and the other dated August 21, 1999, in the amount of $375.00. Copies of Arotionians' endorsement were attached as well. Arotionians has not responded to this motion.

## DECISION

The court finds that Arotionians, as a bankruptcy preparer, has violated 11 U.S.C. § 110(d)(1); (f)(1), (g)(1) and (h)(2). In addition, the court finds that Arotionians has engaged in fraudulent, unfair and deceptive acts, these violations and findings being certified to the district court, pursuant to § 110(i)(1), concurrently with the filing of this Memorandum of Decision.

The Kangarloo's motion for default judgment is denied for the following reasons. Damages requested under § 110(i)(1) must be requested from the district court on motion and after a hearing. See 11 U.S.C. § 110(i)(1). Amounts requested for violations of § 110(d)(1), (f)(1) and (g)(1) constitute fines, as described in the statute, and therefore, are payable to the United States Treasury. See 11 U.S.C. § 110(d)(2), (f)(2) and (g)(2). Fees found to be in excess of the value of services rendered pursuant to § 110(h)(2) must be turned over to the Chapter 7 Trustee. See 11 U.S.C. § 110(h)(2).

1. As noted by General Order No. 96–3 of the District Court for the Central District of California, § 110(i) "says nothing about how the

## DISCUSSION

**1. Arotionians qualifies as a bankruptcy petition preparer under 11 U.S.C. § 110(a).**

■ Section 110 applies to only "bankruptcy petition preparers." *Fessenden v. Ireland (In re Hobbs)*, 213 B.R. 207, 211 (Bankr.D.Me.1997). The statute defines "bankruptcy petition preparer" as a "person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). The court finds that Arotionians qualifies as a bankruptcy petition preparer, so as to subject him to the provisions of § 110.

■ Arotionians is not an attorney, nor in the employ of attorney Brian Kellogg. The fact that the petition and schedules prepared by Arotionians were never filed is immaterial to a determination that Arotionians qualifies as a bankruptcy petition preparer within the meaning of the statute. It is sufficient that Arotionians prepared documents ostensibly to be filed in the United States Bankruptcy Court. See *In re Burdick*, 191 B.R. 529, 533–534 (Bankr.N.D.N.Y.1996). See also *In re Crowe*, 243 B.R. 43, 50 (9th Cir. BAP 2000) (holding that it is the selling of services which subjects the bankruptcy petition preparer to the court's jurisdiction for violations of § 110).

**2. In the instant case, relief by way of an adversary action is appropriate.**

The applicable provisions of 11 U.S.C. § 110 do not specify the type of proceeding required to assert a claim alleging a violation of § 110.[1] Amended General Order No. 95–03 of the Bankruptcy Court of the Central District of California provides that a debtor "may file a Motion that the Court Impose a Fine," pursuant to 11 U.S.C. § 110(b)-(g), and "may file a Motion that the Bankruptcy Court Certify to the

proceeding ... is commenced in the Bankruptcy Court or the form of the proceeding in that court."

District Court that the Preparer Engaged in Conduct for Which Damages Should be Awarded," pursuant to 11 U.S.C. § 110(i).

■ In the instant case, as Arotionians never filed the petition and schedules he prepared for the Kangarloos. As the Kangarloos seek a money recovery against Arotionians, an adversary complaint is the appropriate vehicle for bringing Arotionians within the jurisdiction of this court. Bankruptcy Rule 7001, in pertinent part, provides ("[a]n adversary proceeding ... is a proceeding (1) to recover money or property ... ").[2]

### 3. Arotionians violated 11 U.S.C. § 110(d)(1), (f)(1), and (g)(1).

■ Section 110(d)(1) requires a bankruptcy petition preparer to furnish the debtor with a copy of the petition and schedules no later than the time when the documents are presented to the debtor for his or her signature. 11 U.S.C. § 110(d)(1). The court finds that Arotionians failed to provide the Kangarloos with copies of their petition and schedules at the time that they signed these documents and accordingly has violated § 110(d)(1).

■ Section 110(f)(1) prohibits a bankruptcy petition preparer from using the term "legal" or a similar term in any advertisements, or to advertise under any category that includes the term "legal" or a similar term. 11 U.S.C. § 110(f)(1). As one court has explained, § 110(f)(1)

is appropriately viewed as a measure meant to ensure that debtors understand exactly what they will and will not receive from bankruptcy petition preparers. Petition preparer advertising must keep well clear of any suggestion

that the preparer will be offering legal services or insights.

*Hobbs,* 213 B.R. at 215.

■ In the instant case, Arotionians violated § 110(f)(1) by holding himself out as someone permitted to offer legal services by (1) providing Ray Kangarloo with a business card identifying himself as connected with the Law Offices of Brian W. Kellogg, (2) meeting with the Kangarloos at premises containing signage identifying the premises as a law office, and (3) holding himself out as an attorney. See *In re Kaitangian,* 218 B.R. 102, 108 (Bankr. S.D.Cal.1998) (finding a violation of § 110(f)(1) where the petition preparer created the impression that he could offer legal advice); *In re Moore,* 232 B.R. 1, 10, 12 (Bankr.D.Me.1999) (finding a violation of § 110(f)(1) where the advertisement misled consumers into thinking they were purchasing far more than the allowed document preparation services).

Section 110(g)(1) states that "[a] bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition." 11 U.S.C. § 110(g)(1). Courts have disagreed regarding the scope of the prohibitions contained in this statute. Some courts have interpreted subsection (g)(1) as prohibiting the bankruptcy petition preparer from accepting a debtor's money order payable to the Clerk of the U.S. Bankruptcy Court and arranging for delivery of that money order, together with the debtor's petition, to that court. See *In re Green,* 197 B.R. 878, 879 (Bankr.D.Ariz.1996); *In re Jones,* 227 B.R. 704, 705–06 (Bankr. S.D.Ind.1998); *Burdick,* 191 B.R. at 535.

Other courts have interpreted the statute more liberally, prohibiting only the

**2.** Amended General Order No. 95–03 describes the following procedure with regard to the filing of a motion pursuant to 11 U.S.C. § 110(b)–(g) and (i): "[t]he motion shall be accompanied by a declaration under penalty of perjury or a request for judicial notice and copies of any documentary evidence which support the motion. The moving party shall

serve on the bankruptcy petition preparer, the debtor, the Trustee, and the United States Trustee, a Notice of Motion ..., a copy of the motion, and all supporting evidence." The Kangarloos have fulfilled these requirements in the course of moving for default judgment on the complaint.

petition preparer's acceptance of funds for his or her own account regarding the filing fee, and thereby prohibiting the preparer "from misrepresenting or disguising the costs of the petition preparation services by requiring the debtor to furnish a single check for payment of both the petition preparation services and the filing fee," as well as prohibiting the preparer "from enjoying any benefit from the use of the debtor's funds, or from commingling them with any other funds." *In re Reed,* 208 B.R. 695, 697 (Bankr.N.D.Cal.1997).

■ The Kangarloos paid $675.00 to Arotionians, consisting of two checks, one dated August 21, 1999, in the amount of $300.00, and the other dated August 21, 1999, in the amount of $375.00. As to the August 3rd check, it stated "For Bankruptcy—Balance $375.00". The August 21st check stated that the $375.00 was "For Bk Filing". The phrase "For Bk Filing" indicates that the $375 included a filing fee.

In addition, Ray Kangarloo states in his declaration, "Defendant explained that (a) he would prepare and file my bankruptcy case, (b) would represent me at my 341(a) meeting of creditors, (c) his fee for the foregoing services would be $675.00, (d) Defendant could not file my case until Defendant was paid in full and (e) he needed, among other things, copies of my bills." (Ref. Para. 2, lines 7–11).

This evidence reflects that under the liberal interpretation of the statute, Arotionians violated § 110(g)(1). The Kangarloos did not write a check payable to the bankruptcy court for the filing fees separate from the checks they wrote to Arotionians. Instead, in receiving $675 from the Kangarloos, Arotionians collected for his own account funds which were intended to cover filing fees for the Kangarloos' bankruptcy case.

### 4. Arotionians did not violate 11 U.S.C. § 110(h)(1).

In their Third Cause of Action, the Kangarloos state that Arotionians failed to disclose to the court that he received fees in connection with the preparation and filing of their bankruptcy case, in violation of 11 U.S.C. § 110(h)(1).

■ Section 110(h)(1) requires a bankruptcy petition preparer to file, "within ten days after the date of the filing of a petition," a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within twelve months immediately prior to the filing of the case. 11 U.S.C. § 110(h)(1). The statute requires the bankruptcy petition to be filed in order to trigger the requirement that the declaration be filed within the following thirty days. As Arotionians never filed the bankruptcy petition and schedules, he did not violate § 110(h)(1).

### 5. Arotionians Violated 11 U.S.C. § 110(h)(2).

The court finds, however, that the Kangarloos have sufficiently pleaded a violation of subsection (h)(2). Subsection (h)(2) allows the court to disallow and order the immediate turnover ... of any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case found to be in excess of the value of services rendered for the documents prepared. 11 U.S.C. § 110(h)(2).

■ It is immaterial that the Kangarloos do not specifically refer to subsection (h)(2) in their complaint. *Doss v. South Central Bell Telephone Co.,* 834 F.2d 421, 424 (5th Cir.1987). Of significance is whether the complaint sets forth sufficient facts to give Arotionians "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ The Kangarloos received no value for the $675 fee paid to Arotionians, as he neither filed a petition and schedules nor provided the Kangarloo with a copy of those documents. In addition, he failed to perform other services as promised, such

as contacting the Kangarloos' creditors and attending the meeting of creditors. The court finds that the complaint provides Arotionians with sufficient notice of an alleged violation of subsection (h)(2).

### 6. Arotionians engaged in fraudulent, unfair and deceptive conduct entitling the Kangarloos to damages under § 110(i)(1).

 The court finds that the Kangarloos have established a prima facie case entitling them to damages under § 110(i)(1). Arotionians' violation of subsections (d)(1), (f)(1), (g)(1) and (h)(2) provide the basis for an award of damages under § 110(i)(1). *Ross v. Smith (In re Gavin)*, 181 B.R. 814, 824 (Bankr.E.D.Pa. 1995) (noting that violations of several subsections of § 110 are "more than sufficient to trigger the § 110(i) penalties"). In addition, Arotionians committed fraudulent, unfair and deceptive acts, making him liable for damages under § 110(i)(1).

The record before the court reflects that Arotionians created the false impression that he was an attorney working for the Law Offices of Brian W. Kellogg. Arotionians represented to the Kangarloos that he was an attorney and charged a fee excessive for document preparation services, but commensurate with providing legal services.[3] In addition, by giving the Kangarloos a business card imprinted with both his name and the name, address, and telephone number of an established law office, as well as by meeting the Kangarloos at the law office, Arotionians created the false impression that he was part of an established law firm. See *Moore*, 232 B.R. at 7 (finding the petition preparer's acts to

be fraudulent, unfair and deceptive when his "advertisements, . . . fee structure, and his course of conduct combine[d] to create a misleading impression that he brings to his clients some measure of lawfully salable bankruptcy expertise"); *Gavin*, 181 B.R. at 823 (fraudulent, unfair and deceptive acts included "furnishing [the debtor] with a self-serving, deceptive business card," and "appear[ing], to lay persons, to be attorneys or acting under the supervision of attorneys").

In addition, Arotionians received money from the Kangarloos for filing their case, which never occurred. He misrepresented to the Kangarloos that he had filed their case, and, in furtherance of that misrepresentation, he furnished the Kangarloos with a false case number. See *Burdick*, 191 B.R. at 533–534.

 Arotionians also engaged in the unauthorized practice of law, by advising the Kangarloos regarding the scheduling of their primary residence. State law determines whether a bankruptcy petition preparer has engaged in the unauthorized practice of law. *Kaitangian*, 218 B.R. at 108, quoting 2 Collier on Bankruptcy par. 110.12 (15th ed.1997); 11 U.S.C. § 110(k). In California, the unauthorized practice of law "includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court." *Baron v. City of Los Angeles*, 2 Cal.3d 535, 86 Cal.Rptr. 673, 677, 469 P.2d 353 (1970). See also *People v. Landlords Professional Services*,

---

**3.** "[The services of bankruptcy petition preparers are strictly limited to typing bankruptcy forms.]" *Kaitangian*, 218 B.R. at 113. Consequently, courts have considered bankruptcy petition preparation fees to be excessive when greater than the usual charge for typing services. See *In re Mullikin*, 231 B.R. 750, 753 (Bankr.W.D.Mo.1999) (concluding that "the work which a petition preparer may do is simply to type forms and file documents"); *Moore*, 232 B.R. at 15 ("[a] petition

preparer may be the do-it-yourself debtor's scrivener—nothing more"). Specifically, courts have found fees to be excessive when they begin to approach the level of the usual charge for an attorney's services. See *Wagner*, 241 B.R. at 122 (finding a charge of $250 to be excessive under subsection (h)(2), when "assuming arguendo that [the petition preparer] had not illegally engaged in the unauthorized practice of law, would have been not more than $50").

215 Cal.App.3d 1599, 264 Cal.Rptr. 548, 553 (1989) (distinguishing between clerical services such as "fill[ing] the forms in at the specific direction of the client" and "personally advis[ing] the client with regard to his specific case").[4]

■ The court, having found facts rendering Arotionians liable for damages under § 110(i)(1), recommends to the district court that it award damages pursuant to § 110(i)(1) in the amount of $5,500.00.

The statute provides for an award to the debtor of (1) actual damages, 11 U.S.C. § 110(i)(1)(A); (2) the greater of $2,000 or twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services, 11 U.S.C. § 110(i)(1)(B); and (3) reasonable attorneys' fees and costs in moving for damages under this subsection. 11 U.S.C. § 110(i)(1)(C). Based on the declaration of Price, the Kangarloos have established that they are entitled to an award of $2,050 for actual damages, representing the amount they had to pay Price to file their bankruptcy petition, plus an award of at least $1,500, representing attorney's fees and costs which they have incurred in filing the instant motion for damages under § 110(i). In addition, based on the fact that the Kangarloos paid Arontionians $675 for his services, they are entitled to an award of $2,000, that amount being greater than twice the amount paid for Arontionians' services.

**7. Section 110(i)(1) requires that any damages be awarded by the district court, and § 110(h)(2) requires that any excessive fees be turned over to the Chapter 7 Trustee.**

The bankruptcy court has found and certifies that Arotionians has violated § 110(d)(1), (f)(1), (g)(1) and (h)(2), and that Arotionians has engaged in fraudu-

lent, unfair and deceptive conduct. The Kangarloos seek monetary damages under § 110(i)(1) for these violations and unlawful conduct.

■ Section 110(i)(1) provides:

(i)(1) . . . if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor—

(A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

Section 110(i)(1) mandates that a request be made to the district court to award damages for violations of § 110(i). Therefore, the Kangarloos' motion for a default judgment seeking monetary damages under Section 110(i) must be denied without

---

4. There is disagreement among bankruptcy courts whether the unauthorized practice of law per se constitutes a fraudulent, unfair and deceptive act in violation of subsection (i), or whether the unauthorized practice is in violation of subsection (i) only if the conduct itself was culpable. Compare *Moore*, 232 B.R. at 8, with *In re Losee*, 195 B.R. 785, 786 (Bankr.

M.D.Fla.1996) and *In re Chamberland*, 190 B.R. 972, 978 (Bankr.M.D.Fla.1996). However, inasmuch as Arotionian's advice that the Kangarloos need not schedule their primary residence was incorrect, under either standard Arotionian's unauthorized practice of law constitutes conduct fraudulent, unfair and deceptive, in violation of subsection (i).

prejudice to their applying to the district court for an award of damages.

 In addition, § 110(h)(2) requires that any funds determined to have to be paid to Arotionians in excess of the value of the services rendered to the Kangarloos is required to be turned over to the Chapter 7 trustee. This precludes the turnover of these funds to the Kangarloos.[5] Therefore, the Kangarloos' motion for default judgment seeking a turnover of excessive fees to them must be denied.

8. **The Kangarloos are not entitled to recover fines of $500 per violation for Arotionians' violation of 11 U.S.C. § 110(d)(1), (f)(1) and (g)(1).**

This court has determined that Arotionians violated § 110(d)(1), (f)(1) and (g)(1). The Kangarloos have requested that they be awarded damages of $500 for each violation pursuant to § 110(d)(2), (f)(2) and (g)(2). These subsections provide that "[a] bankruptcy petition preparer may be *fined* not more than $500" for each violation of the respective subsections. 11 U.S.C. § 110(d)(2), (f)(2) and (g)(2) (emphasis added). The Kangarloos' request raises the issue of whether the statute permits the award of the fines described in § 110(d)(2), (f)(2) and (g)(2) to the Kangarloos.

 This court has found no authority to support an award of the fines described in § 110(d)(2), (f)(2) and (g)(2) to the Kangarloos. Rather, cases which have determined that there has been a violation of § 110(d)(1), (f)(1) or (g)(1) have without exception required the errant bankruptcy petition preparer to remit the fines provided for in the statute to the federal government. See *Kaitangian,* 218 B.R. at 117; *Burdick,* 191 B.R. at 538; *In re Fish,* 210 B.R. 603, 609 (Bankr.D.Colo.1997); *In re*

*Paskel,* 201 B.R. 511, 520 (Bankr.E.D.Ark. 1996); *In re Cordero,* 185 B.R. 882, 886 (Bankr.M.D.Fla.1995); *In re Wagner,* 241 B.R. 112, 122 (Bankr.E.D.Pa.1999). See also Black's Law Dictionary (7th ed.1999) (defining fine as "[a] pecuniary criminal punishment or civil penalty *payable to the public treasury*") (emphasis added); *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265 n. 7, 109 S.Ct. 2909, 106 L.Ed.2d 219 (discussing the historical difference between damages and fines).

In accordance with the authorities, this court orders Arotionians to pay a fine of $500 for each subsection violated, to be remitted to the United States Treasury. Therefore, the Kangarloos are not entitled to a default directing that they receive from Arotionians fines described as damages for violations under Subsection (d)(1), (f)(1) and (g)(1).

 In setting the fines at the maximum level, the court finds aggravating circumstances evidenced by a pattern of conduct on the part of Arotionians including continual avoidance, deception, apparent conversion of the filing fee, failure to provide services of any value, and failure to answer the allegations contained in the Kangarloos' complaint. See *Fish,* 210 B.R. at 606.

The contents of this Memorandum of Decision shall constitute this bankruptcy court's findings of fact and conclusions of law.

---

**5.** The instant case involves none of the special circumstances, such as dismissal of the bankruptcy case, which have led courts to order that the disgorged fees be turned over directly to the debtor. See e.g., *Moore,* 232 B.R. at 12 ("turnover to the trustee, and possible exemption of the funds, as the statute contemplates is not practical"); *Hobbs,* 213 B.R. at 216.