In re Yvonne FRANCE, Debtor.

No. 101–16110–353.

United States Bankruptcy Court,
E.D. New York.

Jan. 22, 2002.

---

Jeffrey L. Saltiel, Tenenbaum, Dunbar, Saltiel & Berger, Brooklyn, NY, for Debtor.

Michael A. Resilard, Forest Hills, NY, Pro se.

Stuart P. Gelberg, Garden City, NY, Chapter 13 Trustee.

Linda Riffkin, New York City, Office of the United States Trustee.

*DECISION REGARDING CONDUCT OF BANKRUPTCY PETITION PREPARER AND CERTIFICATION TO DISTRICT COURT*

JEROME FELLER, Bankruptcy Judge.

### INTRODUCTION

On August 1, 2001, a hearing was held on a motion filed by Yvonne France ("France" or the "Debtor"), Chapter 13 Debtor herein, for sanctions under Bankruptcy Code Section 110, 11 U.S.C. § 110 (hereinafter "Section 110"), against Michael A. Resilard ("Resilard"). Specifically, the Debtor seeks the following relief: 1) To penalize Resilard and Mars Associates Inc. ("Mars"), a Resilard alter ego, for not complying with the statute [1] governing bankruptcy petition preparers in three Chapter 13 bankruptcy cases of the Debtor; [2] 2) To order, pursuant to Section

---

1. The Debtor alleges that Resilard and Mars violated Section 110(b)(1), (c)(1), (d)(1), (e)(1), (f)(1), (g)(1), and (h)(1).

2. The three Chapter 13 cases are: *In re Yvonne France*, Case No. 99–17799 (E.D.N.Y.1999)(hereinafter referred to as the first bankruptcy case); *In re Yvonne France*, Case No. 99–46224 (S.D.N.Y.1999)(hereinaf-

110(h)(2) and (3), Resilard and Mars to disgorge and turnover to the trustee the sum of $17,000 paid to Resilard and Mars; and 3) To certify, pursuant to Bankruptcy Code Section 110(i)(1), the findings of fact constituting the violations of Section 110 to the District Court. Resilard opposes the motion, asserting that he only assisted the Debtor with one of the bankruptcies without any fee.[3] As there appeared to be material facts in dispute, the Court set the matter down for an evidentiary hearing.[4]

Upon review and consideration of the entire record, including the testimony and documents adduced at the evidentiary hearing held on October 18, 2001, and post-hearing submissions, this Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52,[5] made applicable to this contested matter by Fed. R. Bankr.P. 9014 and 7052.

### FINDINGS OF FACT

The Debtor was born in Georgetown, Guyana and completed two years of college in Guyana. (Tr. 2 at 103). France moved to the United States in 1976. (*Id.* at 104). While the Debtor testified that English was her first language, (*id.*), it was evident to the Court that she had difficulty under-

standing some questions posed to her and spoke in broken English. The Debtor appeared naive, but very genuine.

The Debtor testified that she was solicited by Resilard to file a petition and on June 1, 1999 she paid him $15,000 at that time to "save my home from being foreclosed." (Tr. 2 at 77–79; Debtor's Exhibit 5).[6] According to the Debtor, Resilard told her that "the first thing he will do is file [sic] bankrupt." (Tr. 2 at 81). Thereafter, the Debtor paid Resilard an additional $2,000 in cash. (Tr. 2 at 87).

A petition under Chapter 13 of the Bankruptcy Code was filed in the name of Yvonne France on June 9, 1999. (D's Ex. 3). The Debtor testified that on June 1, 1999, she met with Resilard and signed blank bankruptcy forms in front of him. (Tr. 2 at 79–83). France further stated that she observed Resilard preparing the first bankruptcy petition, (*Id.* at 82), and that Resilard actually typed in the words on the preprinted forms. (*Id.*). When the Debtor signed the petition, it did not have an attorney's name on it. (*Id.* at 83). However, according to the Debtor, when she ultimately received a copy of that petition, it was signed by an attorney, Chester Miller, Esq. (D's Ex. 3). France adamantly

ter referred to as the second bankruptcy case); and *In re Yvonne France,* Case No. 00–11786 (E.D.N.Y.2000)(hereinafter referred to as the third bankruptcy case).

3. Resilard's Affirmation in Opposition to motion, dated July 6, 2001 at 2.

4. August 1, 2001 Transcript, pp. 24–25; 36. Chief Bankruptcy Judge Duberstein, acting on behalf of this Court, presided at the initial hearing. On October 18, 2001, an evidentiary hearing was held on the merits before the undersigned. Hereinafter, all references to the transcript of August 1, 2001 will be designated "Tr. 1" and the evidentiary hearing transcript of October 18, 2001 will be designated "Tr. 2." We note that there was a

typographical error on the face page of the August 1, 2001 transcript; it incorrectly specifies the date as August 8, 2001 as opposed to the correct date of August 1, 2001. However, the other pages in that transcript correctly specify the date as August 1, 2001.

5. Fed.R.Civ.P. 52 provides, in pertinent part, that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon...."

6. The Exhibits introduced at the evidentiary hearing by the Debtor are referred to as "D's Ex." and the Exhibit introduced by the Chapter 13 trustee (the "Trustee") is referred to as "T's Ex."

denied ever meeting Mr. Miller or hiring him for the purposes of filing any bankruptcy petition. (Tr. 2 at 84). Resilard's name does not appear on the first bankruptcy petition. The Debtor further testified that she did not pay the filing fee. (*Id.*). France was told by Resilard not to go to Court or to the meeting of creditors, (*Id.* at 86). Resilard also instructed her to forward all mail from her creditors and the Bankruptcy Court to him. (*Id.* at 85–86). On September 9, 1999, the first bankruptcy case was dismissed.

The Debtor's second Chapter 13 petition was filed on November 15, 1999 in the Southern District of New York. (D's Ex. 2). The Debtor testified that she was not familiar with that document, nor did she know that it was even being filed. (Tr. at 96–97). France did not recall ever signing that document, although she recognized her signature thereon. (*Id.* at 96). France testified that Resilard summoned her to his office to sign some blank forms, which she did, and for that reason did not recognize the document. (*Id.* at 97). France had no knowledge of the Manhattan address listed as her address on the petition. (*Id.* at 96). This bankruptcy filing bore an address for the Debtor of 205 West 88th Street, Apt. 9D, New York, New York 10024. (D's Ex. 2). According to Resilard, this residence is his family's old address. (*Id.* at 35). Although Resilard's name does not appear on this petition, the Debtor assumes that he prepared this petition and paid the filing fee.[7] This petition, which was filed in the Southern District of New York, was dismissed with prejudice to refiling for one year on March

2, 2000. (D's Ex. 2). The Debtor states that she did not see this petition until she obtained a copy of her file from Resilard, sometime after the case was dismissed.[8]

The Debtor's third Chapter 13 petition was filed on February 23, 2000. (D's Ex 4). The Debtor testified that she prepared the bankruptcy petition in the presence of Resilard under his specific directions, and that she filed the petition and schedules *pro se.* (Tr. 2 at 93–94). According to the Debtor, Resilard told her what to put on the form. (Tr. 2 at 93). Thus, the choice to file under Chapter 13, the exemptions selected, and the decision as to which assets and creditors were to be listed were made by Resilard. (*Id.* at 99–102). When the Debtor queried Resilard as to why she had to do this, she was told "you have to keep doing it until they accept it." (*Id.* at 92). Resilard instructed her where and how to file and she complied. (*Id.* at 94). This petition was dismissed with prejudice to refiling for one year on April 5, 2000.[9]

At this point, the Debtor stated that we were "fed up" with Resilard's failures to save the homestead and his endless requests for more money; an attorney was sought and the church referred the Debtor and her husband to an attorney who filed a Chapter 13 case on behalf of Mr. France that was also eventually dismissed.[10]

The Court found the Debtor to be a highly credible witness; her testimony was straightforward and non-evasive. On the other hand, the Court found Resilard to be a wholly incredible witness. He was argumentative and belligerent in his answers to almost every question posed and he delib-

---

7. Debtor's Affidavit, sworn to on June 7, 2001, in Support of Motion For Penalties Pursuant to 11 USC § 110 ("Debtor's Affidavit") at 3.

8. Debtor's Affidavit at 3.

9. In the Debtor's Affidavit, France states that she did not receive copies of the petitions until she picked up the file from Resilard sometime in the year 2000. (*Id.* at 2–3).

10. Debtor's Affidavit at 4.

erately tried to obfuscate the record; his testimony was neither straightforward nor honest.[11]

Resilard conducts his affairs wearing several hats. As a sole proprietor, he is Abstract Financial Associates and he currently operates a business under the name of Mars Associates, Inc. (Tr. 2 at 9–10; 23–26). Resilard claims to be both a licensed mortgage broker and a licensed real estate broker. (*Id.* at 7). It is undisputed that Resilard is not admitted to practice law in any jurisdiction, nor is he employed by an attorney licensed to practice law.

Resilard operates his businesses by purchasing mailing lists of people whose homes are in foreclosure and solicits their business by mailing to them letters offering his services, which include representations that he assists in stopping foreclosures *pro se*, arranges "short sales," and refinances mortgage debt using a so-called accumulated equity in the property. (T's Ex. 1).

Resilard did not dispute the fact that he solicited and met with the Debtor in June 1999 "as a result of [the Debtor] being in foreclosure." (Tr. 2 at 5). However, he vehemently denied that he is a bankruptcy petition preparer. Instead, he asserted that he met with France to provide her with a buyer and a contract of sale. (*Id.* at 10). According to Resilard, the Debtor signed a contract of sale ("Contract of Sale") with a buyer that he supplied, but the Debtor willfully failed to close the real estate transaction to satisfy all the secured creditors.[12] (Tr. 2 at 10–14; 47; 52). The Debtor, however, testified that she never agreed to sell her residence to anyone (*id.* at 104),[13] and she denied ever signing such a Contract of Sale. (*Id.* at 105).

Resilard admitted that the Contract of Sale was to be used for negotiation purposes only and was not the actual contract of sale for the property. (*Id.* at 20). According to Resilard, the Contract of Sale was used for the purpose of obtaining a short satisfaction from France's secured lenders. (*Id.* at 21–22). No other contract was ever produced. The transaction never closed.

Resilard testified that he was only familiar with the first bankruptcy petition that he says was filed and signed by an attorney, Chester Miller, Esq. (*Id.* at 30). As Resilard stated, "We did retain an attorney for her [the Debtor], yes. Mr. Miller was her attorney for the bankruptcy at the time, yes." (*Id.* at 18). Remarkably, Resilard stated that Mr. Miller also represented the potential buyer for the Debtor's

---

**11.** *See, e.g.,* Tr. 2 at 20–32. A good example of Resilard's efforts to mislead occurred as follows: At the August 1, 2001 hearing, and after reviewing the file in this matter, Judge Duberstein stated, with Resilard present, "Well, this is the past history of what happened. I am a bankruptcy judge...for 20 years. And for about 15 of the 20 years, I had experience, heavily, with bankruptcy petition preparers. One of them went to jail. Others were absolutely forbidden from appearing in my court. Others were directed to turn monies over. I have never read about a case as horrendous, as bad, as this one in which you participated." (Tr. 1 at 13). Yet, at the October 18, 2001 hearing, when this Court posed a question to Resilard regarding a directive by Judge Duberstein, Resilard responded cryptically saying, "No. Judge Duberstein directly said this case is like a frivolous case." (Tr. 2 at 32).

**12.** *See* Resilard's two page Affirmation in Opposition to motion and Contract of Sale appended thereto.

**13.** Noteworthy is that the Contract of Sale is dated April 26, 1999, despite the testimony of both Resilard and the Debtor that they met first on June 1, 1999. In addition, the Contract of Sale does not bear the signature of Godfrey France, the Debtor's husband, cotenant by the entirety. (Tr. 2 at 12–14).

property. (*Id.*). On the other hand, France firmly denied ever meeting Mr. Miller or hiring him for the purposes of filing any bankruptcy. (*Id.* at 84).[14]

While Resilard testified, at one point, that he was only familiar with the first bankruptcy filing, upon further questioning, he admitted familiarity with the second bankruptcy case. (Tr. 2 at 33). However, Resilard stated that the Debtor "did it herself personally." (*Id.* at 33). Yet, the second bankruptcy petition listed an address of the Debtor at 205 West 88th Street, Apt. 9D, New York, New York 10024, an apartment in which the Debtor never resided. Resilard testified that this was "my family's old address." (Tr. 2 at 35). Resilard claimed to have given this address to France for the purpose of her filing the bankruptcy petition herself. (*Id.* at 35–36). The Debtor denied ever filing this bankruptcy petition. (Tr. 2 at 95–96). Resilard testified that he was not familiar with the third bankruptcy petition. (*Id.* at 43; D's Ex. 4). Resilard asserted that upon signing the Contract of Sale in 1999, the Debtor had retained Resilard's services in the capacity of a real estate broker and that she paid him a commission fee of $15,000, based on 6% of the contract price of $300,000, for producing a buyer and she defaulted by not closing.[15] (Tr. 2 at 47–52). When queried as to when he earned his real estate commission, Resilard testified that it was earned upon providing a buyer agreed to by the seller. (*Id.* at 47). Resilard opined that one earns the com-

mission upon an agreement with the seller. (*Id.* at 48).

Resilard was found to violate the provisions of Section 110 in the past. *Carolyn S. Schwartz v. Michael Resilard d/b/a First Equity Financial Services and M.A.R.S. Associates, Inc.* (*In re Gerarda Donahue*), Case No. 897–81726–288; Adv. Proc. No. 897–8596–288 (Bankr.E.D.N.Y. May 20, 1998) (unpublished Memorandum Opinion and Order, Honorable Stan Bernstein, U.S.B.J.)(collectively the "Order")(D's Ex. 1). The Order permanently restrained Resilard from assisting debtors in the preparation or filing of any petitions under any chapter of the Bankruptcy Code, which included utilizing bankruptcy forms or templates for third parties or from preparing any pleadings or other legal documents relating to bankruptcy cases for third parties. *Id.* at 28. The Order enjoined Resilard from sending any notices or any communications to any person undergoing foreclosure proceedings, who are listed in any publicly available documents, newspapers, or listed by services. *Id.* The Order enjoined Resilard from offering any financial or consulting services to any person suffering the prospect of the entry of a foreclosure judgment or foreclosure sale and charging a fee in connection with any of the foregoing services, whether such services be regarded as credit counseling, mortgage refinancing or assisting in the sale of real property. *Id.* The Order also enjoined Resilard from the illegal and unauthorized practice of law before the United States Bankruptcy

---

**14.** It may well have been helpful for Mr. Miller to have testified, especially since Resilard disputed the Debtor's claim that she never met him. However, both parties failed to produce or subpoena Mr. Miller although Judge Duberstein had directed them to do so. (Tr. 1 at 36–37).

**15.** *See* Exclusive Listing Agreement, dated May 1, 1999, appended to Resilard's Affirma-

tion in Opposition. Significantly, while Resilard's contends that the payment of $15,000 was his commission, if you compute 6% of $300,000, the actual amount is $18,000, not $15,000. As usual, Resilard had a facile answer to this inconsistency. He said that the Debtor could only afford to pay $15,000 at the time. (Tr. 2 at 48).

Court, including but not limited to advising customers or clients verbally or in writing as to the meaning or significance of legal terms in connection with bankruptcy cases or proceedings or preparing legal documents on behalf of third parties. *Id.* at 29. Resilard did not appeal the Order.

Resilard testified that he was familiar with Judge Bernstein's opinion but that it "has no bearing over this case." (Tr. 2 at 28). According to Resilard, only state agencies have jurisdiction over his relationships with France, as such matters only implicate his activities as a real estate broker and relate to mortgages. (*Id.* at 29). Resilard declares, without reservation, that the jurisdiction of the state agencies overrides the jurisdiction and any orders of the bankruptcy court. *Id.*

The record herein fully support a finding that Resilard is a bankruptcy petition preparer as defined in Section 110(a)(1). Resilard prepared the first two bankruptcy petitions and closely directed the Debtor in preparing the third bankruptcy petition, which renders him a bankruptcy petition preparer for the purposes of that case. Resilard has not provided a scintilla of credible evidence to controvert these findings. Resilard's testimony was fraught with untruths, inconsistencies and contradictions and thus, his testimony is accorded no weight. Indeed, on August 1, 2001, after reviewing the file and Judge Bernstein's decision, Judge Duberstein swiftly concluded that Resilard is a bankruptcy petition preparer. (Tr. 1 at 35).[16]

This Court further finds that Resilard did not sign the prepared documents or print his name or address on any of the three bankruptcy petitions. Resilard did not put his social security number on any of the three bankruptcy petitions and did not provide the Debtor with a copy of the signed bankruptcy documents in any of the three cases until she retrieved her file after the dismissal of all three bankruptcy cases. The evidence further shows that Resilard paid the filing fee for France's first and second bankruptcy cases and that he did not file any declaration in the three cases disclosing the fees paid to him by the Debtor.

Stuart P. Gelberg, the Chapter 13 trustee, testified as an expert witness as to the value of the services rendered by Resilard. According to Mr. Gelberg, the value of Resilard's services in each of the three bankruptcy cases is zero. (Tr. 2 at 112–114). Mr. Gelberg further testified that Resilard is "a plague on the community." (*Id.* at 115).

## DISCUSSION

■ Section 110 provides for monetary sanctions and injunctive relief against bankruptcy petition preparers who violate the provisions of that section.[17] As defined

---

16. As Judge Duberstein stated, "You're a bankruptcy petition preparer. From what the facts are here, I recognize you as one who's engaged in the business of preparing bankruptcy petitions, helping people. Otherwise, Judge Bernstein would never have come down with the decision. You never even did an appeal from this decision. You even complied and paid him, as you say, the fine that he directed because it was an admission of guilt." (Tr. 1 at 35).

17. Section 110 was enacted in 1994 "to protect consumers from abuses of non-lawyer petition preparers." *Consumer Seven Corp. v. United States Trustee (In re Fraga)*, 210 B.R. 812, 818–19 (9th Cir. BAP 1997); *See United States Trustee v. Smith (In re Gavin)*, 181 B.R. 814, 815 (Bankr.E.D.Pa.1995) (Section 110 was enacted to regulate conduct of lay persons who assist debtors in preparing bankruptcy petitions for compensation).

As the Court admonished in *In re Hidalgo*, 96 B.R. 389, 390 (Bankr.S.D.Fla.1988), "Let all individuals who are preying upon the misery and misfortune of poor people by taking their last dollars for false counsel, beware.

in Section 110(a)(1), a bankruptcy petition preparer is "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." *See In the Matter of Denise Ali and In the Matter of Claudius Taylor*, 230 B.R. 477 (Bankr.E.D.N.Y.1999)(finding that foreclosure consultant who, for fee, assisted debtors in preparing skeletal bankruptcy petitions for purpose of staving off foreclosure qualified as a bankruptcy preparer); *United States Trustee v. Womack (In re Paskel)*, 201 B.R. 511, 515–16 (Bankr.E.D.Ark.1996) (noting that even if preparer took money for preparing petition to benefit charity, Section 110 would apply).

 The record is devoid of any evidence to suggest that Resilard is *not* a bankruptcy petition preparer. Significantly, in another case in which Resilard also denied that he was a bankruptcy preparer, Judge Bernstein concluded that there was no evidence to suggest otherwise. *In re Gerarda Donahue, supra.* Moreover, both here and in the various bankruptcy cases discussed in the *Donahue* opinion, Resilard appeared to have engaged in the same *modus operandi.*[18] Both in this case, and in *Donahue*, Resilard steadfastly denied that any fees received were for preparing the bankruptcy petitions and instead claimed they were payments for other services.

At the evidentiary hearing, it became clear that Resilard could not truthfully dispute the relevant facts sworn to and testified to by the Debtor. Interestingly, while at the hearing, Resilard adamantly denied he prepared any of the three petitions, in his two page Affirmation in Opposition, he makes the vague statement that "only one of the bankruptcies was assisted by me without fee," (*id.* at 2), and no where does he state that he did not prepare the other two bankruptcies. His statements at the hearing and in his opposition papers that he was paid $15,000 as a commission fee is also incredible. First, the correct computation is $18,000. And, while it is Resilard's position that he had earned a "commission" of $15,000, it was Resilard who produced a real estate broker agreement, dated May 1, 1999, which on its face contradicts his own testimony as it provides that *in the event Mars Associates sells the property*, it will receive a fee of 6% of the selling price. The first bankruptcy petition was filed on June 9, 1999, only eight days after the $15,000 payment, while the real estate broker agreement provides that Resilard's company would receive the commission upon the sale of the property, a future contingency that admittedly never occurred. The connection between the payment and the bankruptcy filing is obvious.

In sum, Resilard has not provided any credible evidence to controvert the Debtor's sworn testimony and affidavit that Resilard received compensation in connection with and was instrumental in preparing and filing the three prior bankruptcy petitions of the Debtor.[19] As such, the

---

The full power of the court will be used to discover and appropriately sanction such wrongdoers."

**18.** Resilard tacitly acknowledged that he engaged in similar practices. As Resilard testified, "But Gerarda in particular falsified the record. Because when she came to see me, she didn't [sic] came to me for bankruptcy. She came for similar reason, like Ms. France. Except that at the time, I had to acknowledge

to the Court that I had assisted her by doing the bankruptcy. I didn't want to lie to the Court." (Tr. 2 at 26–27).

**19.** Resilard did not call any witnesses to contradict the Debtor's position. He also failed to submit any post-evidentiary hearing proposed findings of fact and conclusions of law or any other papers.

Court finds that Resilard is a "bankruptcy petition preparer" as defined by Bankruptcy Code Section 110(a)(1).

■ Having resolved that Resilard is a bankruptcy petition preparer, the Court must determine whether Resilard complied with the requirements of Section 110. The statute requires petition preparers to sign all documents they prepare and to include their name, address and social security number on those documents, Section 110(b)(1), (c)(1), to furnish debtors with a copy of all documents they prepare not later than the time at which a document for filing is presented for a debtor's signature, Section 110(d)(1), and within ten days after the filing of a bankruptcy petition, to file a declaration revealing all compensation they received from the debtor in the twelve months preceding the filing, Section 110(h)(1). Additionally, the statute prohibits petition preparers from "execut[ing] any document on behalf of a debtor," Section 110(e)(1), from using the word "legal" or any related term in advertising, Section· 110(f)(1), and from collecting court filing fees from debtors, Section 110(g)(1). Bankruptcy courts may impose statutory fines of up to $500 for each specific violation and the District Court awards further relief upon request of the debtor, the trustee, or a creditor under Section 110(i).

None of the three bankruptcy petitions in this litigation contained any information indicating they had been prepared by Resilard. He failed to list his name, address, and social security number on any of the petitions. Resilard also failed to furnish the Debtor with a copy of the petitions as mandated by the statute. He paid the filing fees in the first two bankruptcy cases and did not file any declaration disclosing the $17,000 in fees received from the Debtor.

## CONCLUSIONS OF LAW

Resilard is a bankruptcy petition preparer as defined under Bankruptcy Code Section 110(a) and he prepared. all three bankruptcy petitions within the meaning of that statute.

■ The value of the services rendered by Resilard is zero.

Resilard three times violated Bankruptcy Code Section 110(b)(1) which provides that "a bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address." He prepared the petitions for the first and second bankruptcy cases. The petition in the third case was prepared by the Debtor under the specific directions of Resilard. Accordingly, Resilard warrants the appellation of a "bankruptcy petition preparer" as contemplated by Section 110 in the third bankruptcy case. Resilard did not sign the documents prepared or print his name and address on any of the three bankruptcy petitions.

Resilard violated Section 110(c)(1) three times in that he failed to place on the petitions his social security number. He also violated Section 110(d)(1) three times in that he failed to provide the Debtor with a copy of the petitions until long after the documents were actually filed. Resilard twice violated Bankruptcy Code Section 110(g)(1). He filed the first two petitions and the Debtor did not give any money for the filing fees. Yet, court records show the filing fees were paid. Thus, we *per force* conclude that Resilard paid the filing fees. We further find that Resilard violated Section 110(h)(1) three times, as he did not file any declaration with the Court disclosing fees paid by the Debtor in the sum of $17,000. We also conclude that Resilard and Mars' services were of no value to the Debtor.

■ The Debtor has requested and the Court grants the following relief:

1) Pursuant to Section 110(b)(2), Resilard and Mars are imposed with the fine of $500 in each of the three prior bankruptcy cases for a total sum of $1,500;

2) Pursuant to Section 110(c)(3), Resilard and Mars are imposed with the fine of $500 in each of the three prior bankruptcy cases for a total sum of $1,500;

3) Under Section 110(d)(2), Resilard and Mars are imposed with the fine of $500 in each of the three prior bankruptcy cases for a total sum of $1,500;

4) Pursuant to Section 110(e)(2), Resilard and Mars are imposed with the fine of $500 in the second bankruptcy case;

5) Pursuant to Section 110(g)(2), Resilard and Mars are imposed with the fine of $500 in the first and second bankruptcy cases for a total sum of $1,000;

6) Pursuant to Section 110(h)(2), the Court disallows Resilard and Mars' fee of $17,000 and orders the immediate turnover of said sum to the Chapter 13 trustee, Stuart P. Gelberg; and

7) Pursuant to Section 110(i)(1), the Court hereby certifies to the District Court its findings of fact in respect of the Section 110 violations, and the fraudulent, unfair or deceptive acts of Resilard and Mars.

The Court also concludes that Resilard violated the injunctions contained in the Order issued by Judge Bernstein in the *In re Gerarda Donahue* bankruptcy case. The Order was violated by, *inter alia*, the following activities: i) Resilard assisted France in the preparation and filing of the three bankruptcy petitions and he sent communications to her at a time that she was involved in a foreclosure proceeding;

ii) Resilard offered financial and consulting services to France when she was suffering the prospect of a foreclosure sale, and charged a fee for those services; and iii) Resilard advised France verbally and in writing as to her legal rights in connection with the bankruptcy cases and prepared legal documents.

Resilard preys upon frightened people who are on the verge of losing their homes. He takes advantage of them to his pecuniary advantage without rendering any *bona fide* services to them. Resilard's activities do not appear to be of any redeemable social value and, in fact, may well cause substantial harm to his clients and the public at large. Innocent and naive debtors, such as France, rely upon Resilard's advice and supposed expertise to their detriment. Indeed, there are strong indications that Resilard is engaged in an elaborate scheme of dishonest, immoral and illegal bankruptcy related practices.[20]

In view of the foregoing, this Court directs the United States Trustee to conduct further investigation into the nature and scope of Resilard's illegal, fraudulent and deceptive bankruptcy related practices and, if appropriate, refer Resilard and/or any of his alter egos to the United States Attorney for possible criminal prosecution.

## CERTIFICATION TO DISTRICT COURT

Section 110(i) requires a bankruptcy court to make a certification to the District Court in the event a bankruptcy petition preparer "violates this section or commits any fraudulent, unfair or deceptive act." Following such certification, and in the event the debtor, the trustee, or a creditor makes a motion in the District Court for

---

20. *See, e.g., In re Burdick,* 191 B.R. 529 (Bankr.N.D.N.Y.1996); *Kangarloo v. Arotioni- ans (In re Kangarloo),* 250 B.R. 115 (Bankr. C.D.Cal.2000).

the imposition of penalties on the preparer, the District Court shall order the petition preparer to pay to the debtor:

"(1)... (A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred."

11 U.S.C. § 110(i)(1) and (2).

This Court hereby certifies to the District Court that it has found Resilard in violation of 11 U.S.C. §§ 110(b), (c), (d), (e), (g) and (h). Resilard's preparation and filing of skeletal Chapter 13 petitions merely to thwart foreclosure and related misconduct, all of which were enjoined by a prior order of the Bankruptcy Court and for which he had the temerity to take $17,000 for services rendered, constitute "fraudulent, unfair, and deceptive acts." Resilard preyed on a desperate individual on the verge of losing her home. He solicited the Debtor through direct mail and represented that foreclosure of her home could be prevented by using his services. Resilard gave the Debtor false hope and poor advice, took an exorbitant amount of money and dashed, perhaps irreparably, her chances of saving her home. The egregiousness and severe impact of Resilard's disregard of our bankruptcy laws and bankruptcy court orders cry out for the imposition of additional sanctions.

**SETTLE ORDER.**