In re Deborah A.L. BONARRIGO and Michael J. Bonarrigo, Debtors.

In re Laurie Ann Nelson, Debtor.

Joseph T. Hannigan, Jr.; U–File Discount Document Centers of America, Inc.; U–File Discount Document Centers of Kingston; and Cynthia Hales, d/b/a U–File Discount Document Centers of Westfield, Appellants,

v.

J. Christopher Marshall, United States Trustee, Appellee.

No. CIV.A. 01–11262–GAO.

United States District Court, D. Massachusetts.

July 18, 2002.

Michael J. Bonnarrigo, pro se, Kingston, MA, Paula R.C. Bachtell, Boston, MA, Deborah A.L. Bonnarrigo, pro se, Kingston, MA, for appellees.

Joseph T. Hanningan, Jr., Kingston, MA, Neil J. Berman, Somerville, MA, for appellants.

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The appellants, Joseph T. Hannigan, Jr., U–File Discount Document Centers of America, Inc. ("U–File"), U–File Discount Document Centers of Kingston, and Cynthia Hales, d/b/a U–File Discount Document Centers of Westfield, all purportedly "bankruptcy petition preparers," appeal from a judgment of the United States Bankruptcy Court (1) finding that the appellants engaged in the unauthorized practice of law in violation of 11 U.S.C. §§ 110(g)[1] and (h)[2] and an Agreed Order entered in a prior case; (2) ordering the appellants, jointly and severally, to pay a $500 fine for violating 11 U.S.C. 110(g); (3) ordering the appellants, jointly and severally, to disgorge $339 each to Bonarrigo and Nelson for violating 11 U.S.C. § 110(h); and (4) permanently enjoining Hannigan and Hales "and any persons acting in concert with them, from acting as bankruptcy petition preparers in any jurisdiction in the Commonwealth of Massachusetts." The bankruptcy court's judgment is AFFIRMED.

### Background

The evidence before the bankruptcy judge supported the following facts: Hannigan is the president, clerk, and sole employee of U–File, a corporation that has assisted pro se customers with the preparation of bankruptcy petitions since 1993. U–File has had 17 franchises and satellite offices located throughout Massachusetts. Hales entered into a franchise agreement with U–File in December 1994 and opened a location in Westfield as a sole proprietor. Neither Hannigan nor Hales is licensed to practice law in Massachusetts.

---

1. Section 110 is entitled, "Penalty for persons who negligently or fraudulently prepare bankruptcy petitions," and Section 110(g) provides, in relevant part, "(1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition. (2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1)." 11 U.S.C. § 110(g).

2. Section 110(h) provides, in relevant part, "(1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor. (2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt any funds so recovered . . . ." 11 U.S.C. § 110(h).

The appellants charge clients a flat fee of $379 for assisting with the preparation of bankruptcy petitions and an additional $30 for drafting amended schedules or forms. Their fee does not include the bankruptcy filing fee. The appellants advertise in several small newspapers and the Yellow Pages, and they send direct mail solicitations to individuals whose names appear on civil and small claims court dockets. Typically, Hannigan and Hales conduct an initial interview with their clients and obtain the information necessary to complete the bankruptcy petition. They illustrate terms and concepts for their clients, including "value," "reaffirmation," "liquidated debt," "secured debt," and "non-dischargeable debt." They also explain what will happen at the Section 341 meeting.[3] Clients are instructed to direct any communications they receive from creditors to Hannigan. If clients have any questions regarding legal terms, Hannigan and Hales provide them with written materials that were prepared by an attorney and are sold at office supply stores. Hannigan and Hales also ask clients to sign disclaimers that no U–File employee has given advice regarding exemptions or any legal advice.

After the interview, Hannigan completes the bankruptcy petition for the clients based on the information elicited and sends the completed petition, a cover letter, and the disclaimers to the clients for signature. The cover letter instructs the clients to sign and return the petition and the disclaimers and to include a money order made out to the bankruptcy court for the filing fee. Hannigan then files the petition and an attachment indicating his name, address, identifying number, and the fee he received for preparing the peti-

tion with the bankruptcy court as required by Section 110. Similarly, Hales, as a franchise owner, also conducts interviews with clients and fills out the questionnaire, and then forwards the questionnaire to Hannigan, who completes the petition and files it.

On June 4, 1996, the bankruptcy court approved an Agreed Order between the United States Trustee and U–File in *In re Scanlan,* No. 95–11946–JNF (Bankr. D.Mass.1996) ("Agreed Order"), pursuant to which U–File became obligated to: (1) refrain from selling any further franchises containing the word "legal" or any similar term; (2) contact all existing franchises instructing them that they are no longer to use the term "legal" or any similar term in their advertisements; (3) file an Affidavit of Compliance with the Court; (4) contact the publisher of the Yellow Pages to have the appellant's listing removed from under the heading "Legal Clinics," and (5) otherwise comply with the provisions of 11 U.S.C. § 110.

On May 13, 1999, the United States Trustee filed a complaint against the appellants alleging violations of Section 110 and the Agreed Order and seeking disgorgement of compensation, a permanent injunction, and other relief. On November 8, 2000, a one-day trial was held before Bankruptcy Judge Feeney. On December 19, 2000, Judge Feeney recused herself, and the case was re-assigned to Judge Hillman. The parties agreed that Judge Hillman could decide the matter on the transcripts. On May 18, 2001, Judge Hillman entered the order at issue here.

### Standard of Review

■ On an appeal from the bankruptcy court, "the district court ... may affirm,

---

**3.** Section 341 of the Bankruptcy Code provides, in relevant part, that "[w]ithin a reasonable time after the order for relief in a

case under this title, the United States trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341(a).

modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact ... shall not be set aside unless clearly erroneous ...." Fed. R. Bankr.P. Rule 8013, 11 U.S.C. The bankruptcy court's rulings of law are reviewed de novo. *In re First Software Corp.*, 97 B.R. 711, 713 (D.Mass.1988).

## Discussion

### A. *Unauthorized Practice of Law and Violation of the Agreed Order*

■ Section 110 of the Bankruptcy Code regulates the conduct of a "bankruptcy petition preparer," defined as any "person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing" in the bankruptcy court. *See* 11 U.S.C. § 110(a). Section 110 explicitly provides that none of the restrictions set forth "shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." 11 U.S.C. § 110(k).[4] The bankruptcy court found that Hannigan and

Hales "held themselves out as being authorized to practice law" and engaged in the unauthorized practice of law in violation of Mass. Gen. Laws ch. 221, §§ 46[5] and 46A.[6]

■ The "unauthorized practice of law" is prohibited, but not defined, by Massachusetts law. Massachusetts courts and courts in other jurisdictions have concluded that trying to express a comprehensive "definition of what constitutes the practice of law" is an impossibility and that "each case must be decided upon its own particular facts." *In re Shoe Mfrs. Protective Ass'n*, 295 Mass. 369, 3 N.E.2d 746, 748 (1936). Generally speaking, the practice of law can include, "the examination of statutes, judicial decisions, and departmental rulings, for the purpose of advising upon a question of law ... and the rendering to a client of an opinion thereon." *See Lowell Bar Ass'n v. Loeb*, 315 Mass. 176, 52 N.E.2d 27, 33 (1943).

■ The record contains ample evidence to support the bankruptcy court's finding that the appellants engaged in the unauthorized practice of law. The testimony at

---

4. In response to a vague challenge to the constitutionality of Section 110 in the appellants's brief, the Court affirms that Section 110 is constitutional. *See In re Kaitangian,* 218 B.R. 102 (Bankr.S.D.Cal.1998) (holding that Section 110 did not violate the preparer's equal protection right to pursue his chosen calling because the right to pursue a calling as a bankruptcy petition preparer is not a "fundamental right" for equal protection purposes); *In re Adams,* 214 B.R. 212 (9th Cir. BAP 1997) (finding that Section 110 did not interfere with a fundamental right); and *In re Rausch,* 213 B.R. 364 (D.Nev.1997), *affirmed,* 194 F.3d 954 (9th Cir.1999), *cert. denied,* 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000); *see also, In re Crawford,* 194 F.3d 954 (9th Cir.1999), *cert. denied, Ferm v. U.S. Trustee,* 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000) (holding that Section 110 does not violate equal protection by impermissibly discriminating between attorneys and non-attorneys since the disclosure of pre-

parers social security numbers was rationally related to the legitimate government interest in facilitating the courts).

5. Section 46 provides, in relevant part, "[n]o corporation or association shall practice or appear as an attorney for any person other than itself in any court in the commonwealth ... or hold itself out to the public or advertise as being entitled to practice law, and no corporation or association shall draw agreements, or other legal documents not relating to its lawful business ...." Mass. Gen. Laws ch. 221, § 46.

6. Section 46A provides, in relevant part, "[n]o individual, other than a member, in good standing, of the bar of this commonwealth shall practice law, or, by word, sign, letter, advertisement or otherwise, hold himself out as authorized, entitled, competent, qualified or able to practice law ...." Mass. Gen. Laws ch. 221, § 46A.

trial related substantially to Hannigan and Hale's activities concerning the Chapter 7 petitions prepared and filed for Laurie Ann Nelson and Deborah and Michael Bonarrigo. Hannigan and Hale's unauthorized practice of law included advising clients as to the relevant chapters of the Bankruptcy Code, assisting clients with the categorization of their debts and the election of their exemptions, and defining legal concepts for clients.

Nelson met with Hales, who assisted Nelson in selecting exemptions; explained to Nelson the difference between Chapter 7 and Chapter 13 bankruptcy petitions and the concepts of discharging debt, reaffirmation agreements, and unliquidated debt; and advised Nelson not to schedule a bank debt on which she was a co-signor and to exclude her student loans from the schedule.

Similarly, Hannigan conducted an interview with the Bonarrigos, who believed that Hannigan was a lawyer. Hannigan chose the federal exemption for them without discussing the available options, explained that they could use a "yard sale" valuation to determine the value of their personal property, categorized their debts without instruction from them, instructed them to exclude their student loans from the schedule, explained certain legal terms, suggested that they increase their schedule expenses, and explained the difference between Chapter 7 and Chapter 13 petitions and recommended Chapter 7. Hannigan also instructed them to refer all calls from creditors to him. The Bonarrigos returned their signed petition with a personal check for the filing fee. Hannigan took the check to the bank and exchanged it for a money order payable to the bankruptcy court and filed the petition.

The record also supports the bankruptcy court's finding that the appellants violated the 1996 Agreed Order. From 1997 to 2001, the Yellow Pages contained a listing for "U–File Discount Legal Centers," under the heading "Legal Document Preparation Service," and in 1999, the Lycos webpage contained a listing for "U–File Discount Legal Center." Both listings violate the provisions of the Agreed Order forbidding the use of the word "legal" in U–File's title and in any of its advertisements. Further, the violations of Section 110 discussed below also constitute violations of the Agreed Order.

### B. *Violation of 11 U.S.C. § 110(g)*

The bankruptcy court's imposition of a $500 fine for violating Section 110(g) in connection with the filing of Nelson's Chapter 7 petition was justified.[7] Section 110(g) provides that

(1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.

(2) A bankruptcy petition preparer shall not be fined more than $500 for each violation of paragraph (1).

The purpose of Section 110(g)(1) is to prohibit "a petition preparer from taking 'control' of the filing fee and ultimately controlling the timing of the bankruptcy filing." *In re Hartman,* 208 B.R. 768, 778 (Bankr.D.Mass.1997) (quoting *In re Green,* 197 B.R. 878, 879 (Bankr.D.Ariz.1996)). Hannigan's admitted procedure of instructing clients to give him the signed petition and a money order made out to the bankruptcy court so that he can file the fee and the petition violates Section

---

7. The bankruptcy court acknowledged that the appellants had already been fined for violating this provision in connection with the Bonarrigo filing when Judge Feeney granted summary judgment on this claim prior to the trial.

110(g), and the $500 fine is explicitly authorized under Section 110(g)(2).

### C. *Violation of 11 U.S.C. § 110(h)*

■ Section 110(h)(2) authorizes the bankruptcy court to order the disgorgement of any fee "found to be in excess of the value of the services rendered for the documents prepared." 11 U.S.C. § 110(h)(2). Following *In re Hartman,* 208 B.R. at 768, which found that bankruptcy petition preparers' services are worth approximately $20 an hour, Judge Hillman held that a reasonable fee for the appellants' services was $20 an hour and that having spent two hours with Nelson and two hours with the Bonarrigos, the appellants were entitled to a $40 fee from each client, resulting in the disgorgement of $339 to each client.

The appellants argue that the court's valuation of their services was inappropriate because only the market and their clients can accurately determine the value of their services. The appellants do not challenge the specific method by which Judge Hillman determined the fee or the time the appellants spent with each debtor, nor do they offer an alternative method of valuation. In light of the limited activities in which petition preparers can legally engage due to the restrictions of Section 110 and the state unauthorized practice of law statutes, this Court affirms that $20 an hour is a reasonable fee and affirms the disgorgement order pursuant to Section 110(h)(2).

### D. *Injunction*

■ The bankruptcy court held that the appellants' conduct warranted permanently enjoining them from ever acting as bankruptcy petition preparers in any jurisdiction in the Commonwealth. The bankruptcy court stated that Hannigan's participation in similar litigation in Pennsylvania was "instructive for the purposes of Hannigan's understanding of what constitutes the unauthorized practice of law," and reasoned that the Pennsylvania case, together with the appellants' violation of the Agreed Order and violations of several provisions of Section 110 constituted a pattern of continuous fraudulent conduct and warranted the imposition of the permanent injunction against bankruptcy petition preparation explicitly authorized in Section 110(j)(2)(B).[8]

Some courts have found that enjoining defendants from acting as bankruptcy petition preparers is too harsh where there is no evidence that a more tailored injunction would be ineffective. *See Patton v. Scholl,* No. 98–5729, 1999 WL 431095 (E.D.Pa. June 28, 1999) (vacating an injunction to the extent that it enjoined activities that

---

**8.** Section 110(j) provides that in an action under this section,

  (2)(A)... if the court finds that

    (i) a bankruptcy petition preparer has

      (I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty;

      (II) ..., *or*

      (III) engaged in any other fraudulent, unfair, or deceptive conduct; *and*

    (ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

    (B) If the Court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III), of clause (i) *and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title,* or has not paid a penalty imposed under this section, *the court may enjoin the person from acting as a bankruptcy petition preparer.*

11 U.S.C. § 110(j) (emphasis added).

did not constitute the unauthorized practice of law because "there [wa]s nothing in the record before the court to indicate that Patton would attempt to overstep the restrictions imposed in a more tailored injunction"). On the other hand, courts have allowed the broader injunction when the preparer is violating a more limited injunction that was previously issued in that jurisdiction. *See In re Gabrielson,* 217 B.R. 819 (Bankr.D.Ariz.1998). Here, the breadth of the injunction was justified by the violation of the prior Agreed Order as well as the statute.

### Conclusion

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

IT IS SO ORDERED.