**In re Lorne K. BUCK, Debtor.**

**Maureen A. Tighe, United States Trustee for Region 16, Movant,**

**v.**

**Tiana Scott and We the People, Respondents.**

**No. RS02–25869 PC.**

United States Bankruptcy Court, C.D. California, Riverside Division.

Feb. 26, 2003.

Timothy J. Farris, Esq., United States Department of Justice, Office of the United States Trustee, Riverside, CA, for Movant.

Richard Lubetzky, Esq., Los Angeles, CA, for Respondents.

## MEMORANDUM DECISION

PETER H. CARROLL, Bankruptcy Judge.

Maureen A. Tighe, United States Trustee for Region 16 ("UST") filed a motion pursuant to 11 U.S.C. § 110 and L.B.R.

1002–4 requesting that We the People of Palm Desert, an entity managed by Tiana Scott, (collectively, "We the People") be fined for violation of 11 U.S.C. § 110(g)(1). We the People filed a written response in opposition to the motion. At the hearing, Timothy J. Farris appeared for the UST and Richard Lubetzky appeared for We the People. The court, having considered the UST's motion, We the People's response thereto, the evidentiary record, memorandum briefs and argument of counsel, makes the following findings of fact and conclusions of law[1] pursuant to Fed.R.Civ.P. 52, as incorporated into Fed.R.Bankr.P. 7052 which is applicable to contested matters. Fed.R.Bankr.P. 9014.

## I. *STATEMENT OF FACTS*

The facts are undisputed. On September 30, 2002, Lorne K. Buck ("Debtor") filed his voluntary petition under chapter 7 in this case. Debtor is not represented by an attorney. We the People prepared the Debtor's voluntary petition, schedules, statement of financial affairs and related documents for a fee of $199.[2] We the People disclosed the $199 fee under penalty of perjury in a Disclosure of Compensation of Bankruptcy Petition Preparer filed with the court.[3]

On November 4, 2002, Debtor signed a document entitled "Declaration for Debtors Without an Attorney" stating under penalty of perjury that he paid the filing fee to We the People in conjunction with his bankruptcy—a $200 cashier's check payable to the United States Bankruptcy Court. Debtor further stated that "the person who assisted me explained what an exemption was."[4] On December 20, 2002, the UST filed her motion alleging that We the People violated 11 U.S.C. § 110(g)(1)

---

[1]. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

[2]. In response to Question #9 in the Statement of Financial Affairs, Debtor disclosed that he paid the sum of $199 on August 27, 2002, to "We The People—Palm Desert, 73–121 Country Club Drive, Palm Desert, CA 92260" and "We The People—USA, 1501 State Street, Santa Barbara, CA 93101" for the typing of his petition.

[3]. The Disclosure of Compensation of Bankruptcy Petition Preparer filed pursuant to 11 U.S.C. § 110(h)(1) is signed by "Tiana Scott—We The People." On September 30, 2002, Debtor also signed and filed a document entitled "Statement of Assistance of Non–Attorney With Respect to the Filing of This Petition" which discloses that Debtor received assistance in connection with the filing of the bankruptcy case by "We the People of Palm Desert, 73–121 Country Club Drive, Unit E1, Palm Desert, CA 92260" and "We the People

USA, 1501 State Street, Santa Barbara, CA 93101."

[4]. Advice by a non-lawyer concerning exemptions constitutes the unauthorized practice of law. *See e.g., In re McCarthy,* 149 B.R. 162, 166–67 (Bankr.S.D.Cal.1992) (holding that nonattorney's action in directing debtor to select exempt assets by reference to a comprehensive list of California exemptions constituted unauthorized practice of law); *Michel v. Larson (In re Webster),* 120 B.R. 111, 113 (Bankr.E.D.Wis.1990) (stating that nonattorney exercised legal judgment in selecting exemptions for debtor thereby engaging in unauthorized practice of law). Indeed, the court in *In re Guttierez,* 248 B.R. 287 (Bankr. W.D.Tex.2000) concluded that it is impossible to prepare a bankruptcy petition without practicing law, stating:

"Bankruptcy documents simply cannot be prepared without having to make legal decisions. The debtor must decide under which chapter of bankruptcy to file, what property to claim as exempt, how to classify debts, and (if the petition is under Chapter 13) how and when to file a plan. Even the simplest bankruptcy cases require a familiarity with principles of bankruptcy and state property law which are beyond a lay-

by receiving payment from the Debtor for the court filing fees. The UST requested that We the People be fined pursuant to 11 U.S.C. § 110(g)(2) and ordered to disgorge the $199 fee received in the case.

On January 13, 2003, We the People filed a declaration of Tiana Scott in opposition to the UST's motion. In her declaration, Ms. Scott states under penalty of perjury:

> "The Debtor did not pay the filing fee to myself or We the People. We the People merely arranged, on behalf of the Debtor, for a messenger service to deliver his bankruptcy petition and filing fee to the court for him, and this was done under the specific direction of the Debtor. We the People did not file the documents itself."

[*Scott Declaration*, p. 1, l.26 to p. 2, l.1]. We the People also submitted a declaration signed by the Debtor dated January 17, 2003, in which the Debtor states under penalty of perjury:

> "I requested that We the People of Palm Desert arrange for their messenger service to deliver my bankruptcy petition and the filing fee to the court for me.
>
> I also requested that my petition be filed with the court within two business days after I signed it, and this was, in fact, done."

[*Buck Declaration*, p. 1, l.23–26].

## II. *ISSUE*

The sole issue before the court is whether a bankruptcy petition preparer's receipt

of a payment from the debtor or on behalf of the debtor for the court fees in connection with the filing of the petition, which is in the form of a cashier's check or money order payable to the United States Bankruptcy Court, violates 11 U.S.C. § 110(g)(1).

## III. *DISCUSSION*

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a). The UST, who may raise and may appear and be heard on any issue in any case or proceeding under title 11, has standing to seek relief under 11 U.S.C. § 110. 11 U.S.C. 307. *See Stanley v. McCormick, Barstow, Sheppard, Wayte & Carruth (In re Donovan)*, 215 F.3d 929, 930 (9th Cir.2000).

### A. *We The People's Conduct is Subject to Section 110*

■■■ Section 110 was enacted to protect consumers from abuses by non-lawyer bankruptcy petition preparers. *Consumer Seven Corp. v. United States Tr. (In re Fraga)*, 210 B.R. 812, 816–17 (9th Cir. BAP 1997). Congress passed section 110 to confront petition preparers "who prey on the poor and unsophisticated."[5] Courts have described section 110 as "a

---

person's knowledge. When a petition preparer makes these choices for the debtor, the petition preparer is practicing law." *Id.* at 295. The UST has not, however, alleged in her motion that We The People engaged in the unauthorized practice of law nor does she seek relief for conduct constituting the unauthorized practice of law.

**5.** Speaking for enactment of the Bankruptcy Reform Act of 1994, Senator Metzenbaum in his remarks to the United States Senate observed that "[H]undreds of typing mills are luring customers with vague promises of solving their credit problems, charging the customer hundreds of dollars while inducing them to sign bankruptcy petitions they often do not understand, and then improperly filing

consumer protection measure unrelated to the practice of law." *Id.* at 819; *see United States Tr. v. PLA People's Law-Arizona, Inc. (In re Green)*, 197 B.R. 878, 879 (Bankr.D.Ariz.1996).[6] Section 110 mandates specific requirements to be followed by bankruptcy petition preparers, making it clear that bankruptcy petition preparers may *only* provide typing services to their customers. H.R.Rep. No. 835, 103d Cong.2d Sess. 56 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3365. Section 110 was intended to regulate conduct and practices perceived by Congress to be harmful to the public and the bankruptcy system, not to authorize or legitimize a "profession." *See Guttierez*, 248 B.R. at 297.

Section 110(a)(1) defines a "bankruptcy petition preparer" as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). For purposes of section 110, a "document for filing" is defined as "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case" under title 11. 11 U.S.C. § 110(a)(2).

The evidence demonstrates that We the People falls within the statutory definition of a "bankruptcy petition preparer." We the People assists debtors in preparing bankruptcy documents. It is undisputed

that We The People collected a $199 fee for preparing the Debtor's voluntary petition, schedules, statement of financial affairs and related documents for filing in this case. Thus, section 110 applies to We the People.

### B. *Violation of Section 110(g)(1)*

■ Section 110(g)(1) states that a bankruptcy petition preparer "shall not collect or receive any payment from the debtor ... for the court filing fees in connection with filing the petition." 11 U.S.C. § 110(g)(1). Section 110(g)(2) requires the court to fine a bankruptcy petition preparer up to $500 for each violation of section 110(g)(1). 11 U.S.C. § 110(g)(2). We the People admits that it received the court filing fee from the Debtor. Nevertheless, We the People argues that it did not violate section 110(g)(1) because the funds were received in the form of a cashier's check payable to the United States Bankruptcy Court for the sole purpose of facilitating the Debtor's bankruptcy filing. We the People reasons that–

> "[U]nder such circumstances, the preparer does not collect or receive a 'payment' for the filing fee, but merely acts as an agent for the debtor in transmitting the debtor's money order and bankruptcy petition to the court. This is because the payment is made directly to the court, and not to the preparer per-

---

bankruptcy on their behalf." 140 Cong. Rec. S 14,597 (daily ed. October 7, 1994).

**6.** The *Guttierez* court observed that:
> The consumer protections offered by Section 110 highlight a very real concern: petition preparers are not licensed. Attorneys *are* licensed, and their codes of professional conduct of necessity hold them to a higher standard than petition preparers, who are both unlicensed and unregulated. For example, attorneys are subject to competency requirements and character assessments before they receive a law license. Petition

preparers are presently subject to no competency requirements or licensing procedures. Attorneys can be disbarred, suspended or otherwise sanctioned if they fail to obey court rules or ethical rules promulgated by the state bar. When an attorney's conduct breaches the professional standard of care and damage results, the law provides the client relief. No such remedy was then available against petition preparers. Section 110 was an attempt by Congress to fill that gap.

248 B.R. at 292 n. 13.

sonally. The court receives the payment, the preparer does not."

[*Respondent's Brief,* p. 1, 1.25 to p. 2, 1.1].

### 1. Statutory Construction of Section 110(g)(1)

■ The plain language of a statute is conclusive as to its meaning when the statutory scheme is coherent and consistent. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Where the statute's language is plain, "the sole function of the court is to enforce it according to its terms." *Id.* at 241, 109 S.Ct. 1026; *see Rake v. Wade,* 508 U.S. 464, 471, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). Any judicial inquiry into the purpose, background or legislative history of the statute is foreclosed unless a literal application of the statute produces "a result demonstrably at odds with the intent of its drafters." *Ron Pair,* 489 U.S at 242, 109 S.Ct. 1026. *Accord Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (stating that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there"). *See generally,* Stephen Breyer, *On the Uses of Legislative History in Interpreting Statutes,* 65 S. Cal. L.Rev. 845, 848–49 (1992). Statutory construction of the Bankruptcy Code is a "holistic endeavor" requiring consideration of the entire statutory scheme. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). If a provision is susceptible of more than one interpretation, the construction adopted should advance the overall statutory policy. *Rake,* 508 U.S. at 471, 113 S.Ct. 2187 (stating that one provision in a statute should not be construed so as to suspend or supercede another provision); *Timbers,* 484 U.S. at 371, 108 S.Ct. 626 (statutory term "that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme," for example, when "only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law").

We the People misinterprets the policy and purpose of section 110(g)(1). Neither the language nor policy of section 110(g)(1) purports to authorize a bankruptcy petition preparer to receive some court filing fees and not others. The relevant phrase in section 110(g) is "collect or receive any payment" for the court fees. We the People's interpretation of section 110(g)(1) centers on the term "payment" and fails to take adequate account of the statute's focus on the terms "collect or receive."

Through section 110(g), Congress sought to regulate a bankruptcy petition preparer's handling of filing fees as a matter of federal bankruptcy law. *In re Haney,* 284 B.R. 841, 849 (Bankr.N.D.Ohio 2002); *In re Alexander,* 284 B.R. 626, 632 (Bankr. N.D.Ohio 2002). In choosing the words "collect or receive any payment," Congress used common terms in the disjunctive to broadly prohibit bankruptcy petition preparers from handling any funds earmarked as court filing fees. *See Haney,* 284 B.R. at 849; *Alexander,* 284 B.R. at 633. The court in *Haney* noted that an ordinary definition of the term "receive" includes the concepts of simply "tak[ing] possession or delivery of" or "com[ing] into possession of." *Haney,* 284 B.R. at 849; *see El-Amin v. Bodenstein,* 2003 WL 291897, at *1 (N.D.Ill.2003); *Alexander,* 284 B.R. at 633. Plainly read, the language and punctuation Congress used in section 110(g)(1) cannot be read in any other way.

Secondly, a broad interpretation of section 110(g)(1) comports with the statutory scheme of section 110. Congress mandated specific requirements and prohibited specific practices by bankruptcy petition

preparers under section 110. Bankruptcy petition preparers must:

(1) Sign the document and print on the document the preparer's name and address. 11 U.S.C. § 110(b)(1).

(2) Place on the document, after the preparer's signature, his or her Social Security number. 11 U.S.C. § 110(c)(1).

(3) Give a copy of each of the documents to the debtor not later than the time at which the document is presented to the debtor for signature. 11 U.S.C. § 110(d)(1).

(4) Not execute any document on behalf of the debtor. 11 U.S.C. § 110(e)(1).

(5) Not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal." 11 U.S.C. § 110(f)(1).

(6) Not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition. 11 U.S.C. § 110(g)(1).

(7) Disclose under penalty of perjury, within 10 days after the date of the filing of the petition, any fee received from or on behalf of the debtor within 12 months prior to filing, and any unpaid fee charged to the debtor. 11 U.S.C. § 110(h)(1).

The absence of an exception under section 110(g)(1) permitting bankruptcy petition preparers to collect and receive cashier's checks or money orders payable to the bankruptcy court for filing fees, coupled with the care in which Congress fashioned section 110's express requirements and proscriptions, convinces this court that Congress intended section 110(g)(1) to broadly prohibit bankruptcy petition preparers from handling court filing fees. *See, e.g., Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) (finding that failure to include terms of limitation in statutes should be viewed as meaningful); *Pennsylvania Dept. of Pub. Welfare v. Davenport,* 495 U.S. 552, 562–63, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (holding that failure of Congress to except restitution orders under § 1328(a) meant that such obligations were dischargeable in chapter 13).

 We the People invites the court to look beyond the unambiguous statutory text, arguing that a literal interpretation of section 110(g)(1) leads to an absurd result.[7] A court may look beyond unambiguous statutory text and consider other evidence of intent if a literal interpretation leads to a result that is absurd or contrary to legislative intent. *See United States v. Am. Trucking Ass'ns, Inc.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (refusing to follow statutory text when absurd or futile results are reached); *Towers v. United States (In re Pacific–Atlantic Trading Co.),* 64 F.3d 1292, 1303 (9th Cir. 1995) (construing § 507(a)(7)(A)(iii) and stating that the court would not "presume Congress intended an absurd result"). However, a literal interpretation of a facially clear and unambiguous statute will be enforced notwithstanding an unexpected or absurd result if the result is harmonious with the intent of the legislature. *See Heppner v. Alyeska Pipeline Serv. Co.,* 665 F.2d 868, 872 (9th Cir.1981) (stating

---

**7.** We the People avers that "[T]he practical effect of such a ruling would be to require the preparer to take the petition to the court and wait for the debtor to arrive with the filing fee .... such a construction of the statute would cause an absurd result unintended by Congress, especially where, as here, there is nothing in § 110 which prohibits a preparer from filing the debtor's bankruptcy petition with the court, and Congress certainly could have prohibited a preparer from filing such petitions if that was truly its intention." [*Respondent's Brief,* p. 4, l.20 to p. 5, l.1].

that strict interpretation must stand when ambiguity exists from congressional failure to trace effects of language). Having concluded that Congress intended section 110(g)(1) to broadly prohibit bankruptcy petition preparers from handling court filing fees, the court cannot find that a literal construction of section 110(g)(1) to prohibit bankruptcy petition preparers from handling all court filing fees, including filing fees in the form of cashiers checks or money orders payable to the bankruptcy court, produces "a result demonstrably at odds with the intent of its drafters." *See Ron Pair*, 489 U.S. at 242, 109 S.Ct. 1026.

### 2. Case Law Interpreting Section 110(g)(1)

The court's construction of section 110(g)(1) is consistent with the majority of decisions addressing this issue. *See, e.g., El–Amin*, 2003 WL 291897, *1 (N.D.Ill. 2003); *Hannigan v. Marshall (In re Bonarrigo)*, 282 B.R. 101, 106–07 (D.Mass. 2002); *Haney*, 284 B.R. at 849; *Alexander*, 284 B.R. at 633; *In re Doser*, 281 B.R. 292, 312 (Bankr.D.Idaho 2002); *In re Moffett*, 263 B.R. 805, 812 (Bankr.W.D.Ky.2001); *In re Wallace*, 227 B.R. 826, 828 (Bankr. S.D.Ind.1998); *In re Jones*, 227 B.R. 704, 705–06 (Bankr.S.D.Ind.1998); *Green*, 197 B.R. at 881; *In re Burdick*, 191 B.R. 529, 535 (Bankr.N.D.N.Y.1996). *See generally,* 2 L. King, *Collier on Bankruptcy* ¶ 110.07, at 110–12 (15th ed. Rev.2003).

 Section 110(g)(1) was enacted for three reasons: (1) to prevent the unauthorized filing of petitions; (2) to prevent or curtail the preparer's influence on a debtor's decision and timing on petition filing; and (3) to prevent a preparer's misrepresentation, or misquoting of the filing fee. *Green*, 197 B.R. at 879. *See generally,* 2 L. King, *Collier on Bankruptcy* ¶ 110.07, at 110–12, at 110–13 (15th ed. Rev.2003). Courts adopting the majority view opine

that Congress prohibited bankruptcy petition preparers from even coming into possession of the filing fee to keep preparers from controlling the timing of bankruptcy since the time of filing can affect debtors' rights. *See El–Amin*, 2003 WL 291897, *1; *Doser*, 281 B.R. at 312; *Green*, 197 B.R. at 879. The court in *Green*, construing section 110(g)(1)'s proscription broadly in light of the statute's regulatory purpose, discussed the potential harm to consumers posed by preparers handling filing fees, particularly in the absence of ethical guidelines, competency requirements, licensing procedures for preparers and adequate remedies for their improper conduct, stating:

Because a nonlawyer document preparer cannot give his/her clients adequate assurance that his/her interests will be protected through the course of a bankruptcy proceeding, society, speaking through Congress, has imposed limitations on the ability of nonlawyer petition preparers to act on behalf of debtors. The clear message of § 110 is that nonlawyer petition preparers may not give advice or otherwise make decisions on behalf of the debtor. The petition preparer is also prohibited from interacting with the court on behalf of the debtor.

When viewed from this perspective, the issue at hand is not whether People's Law received a "payment," defined in the most narrow sense. The issue is whether People's Law controlled the timing of the bankruptcy filing. Given that People's Law took possession of the filing fee and controlled the ultimate filing of the petition, this court must conclude that People's Law violated § 110(g).

In so concluding, this court considers the *potential* for harm. If the procedure employed by People's Law was

used by an unscrupulous and/or incompetent petition preparer, it could result in harm to debtors. Indeed, the timing of the petition can sometimes determine whether a debtor will lose his/her home or other property to foreclosure.

*Id.* at 880. *See also El–Amin,* 2003 WL 291897, *1; *Bonarrigo,* 282 B.R. at 106; *Doser,* 281 B.R. at 312; *Wallace,* 227 B.R. at 827.

We the People argues that *Green* and its progeny are contrary to the "California view" espoused in *In re Kangarloo,* 250 B.R. 115 (Bankr.C.D.Cal.2000) and *In re Reed,* 208 B.R. 695 (Bankr.N.D.Cal.1997). We the People points to *Reed* as authority for the proposition that bankruptcy petition preparers may receive court filing fees in the form of cashier's checks and money orders payable to the United States Bankruptcy Court without violating section 110(g)(1).

In *Reed,* the United States Trustee moved for the assessment of fines under section 110(g)(1) asserting that a bankruptcy petition preparer violated the statute by accepting a debtor's money order payable to the Clerk of the U.S. Bankruptcy Court, and arranging for a messenger to deliver the money order to the bankruptcy court together with the debtor's bankruptcy petition. The bankruptcy court denied the United States Trustee's motion, holding that section 110(g)(1) merely "prohibits a preparer from accepting funds *for its own account* with respect to the filing fee." *Reed,* 208 B.R. at 697–98 (emphasis added). In so holding, the *Reed* court dismissed the policy concerns expressed in *Green* concerning the potential for harm when preparers "control" the filing fee and ultimately the timing of a bankruptcy filing for a debtor. *Id.* at 697.[8] Observing that a preparer can be sanctioned under section 110(i) for "failure to file bankruptcy papers," the court reasoned that section 110 "implicitly recognizes" the propriety of preparers filing documents with the court and concluded that a narrow construction of section 110(g)(1) limits the abuses targeted by Congress while permitting preparers "to deliver bankruptcy petitions to the court in accordance with a debtor's instructions without having to resort to awkward devices to avoid taking possession of the debtor's check for the filing fee." *Id.*

*Reed* is the minority position. No other court has adopted *Reed's* narrow construction of section 110(g)(1), and this court declines to do so as well.[9] *Kangarloo* nei-

---

8. The court concluded that "[T]he mere delivery of a money order to a preparer ... would not vest the preparer with any more 'control' over the debtor's timing decision than would the preparer's possession of the debtor's signed bankruptcy petition and list of creditors," and that "a preparer is far more likely to influence the timing of the bankruptcy filing by the speed at which it does the paperwork." *Id.* at 697.

9. Indeed, *Reed's* attempt to craft a narrow construction of section 110(g)(1)'s broad language by reference to the sanctions authorized under section 110(i) for a preparer's failure to file documents was criticized by the court in *In re Doser,* 281 B.R. 292 (Bankr.D.Idaho 2002):

Recall, § 110(g)(1) only prohibits a BPP from receiving funds from the debtor in connection with filing the petition. Presumably, consistent with § 110, a BPP may be hired by a debtor to type and file documents other than a petition commencing a debtor's bankruptcy case, such as the schedules and statement of financial affairs, motions and responses, and even pleadings in adversary proceedings in which the *pro se* debtor may become involved. No filing fees are required to file any of these pleadings. In addition, the Rules provide that the petition, a simple two-page "fill in the blank" form, need not be filed at the same time as the debtor's schedules and statement of financial affairs. Fed.R.Bankr.P. 1007(c) (if petition is accompanied by a list of the debtor's creditors and their address-

ther embraces *Reed* nor supports We the People's construction of section 110(g)(1). In *Kangarloo*, the bankruptcy petition preparer received a check from the debtors payable to the preparer in the amount of $375. On the face of the check was the notation "For Bk Filing." The court fined the bankruptcy petition preparer for violating section 110(g)(1), holding that the preparer impermissibly "collected for his own account funds which were intended to cover filing fees for the Kangarloos' bankruptcy case." *Kangarloo*, 250 B.R. at 122. In so holding, the court stated that the preparer violated section 110(g)(1) even under *Reed's* "liberal interpretation of the statute." *Id.* Nothing in *Kangarloo* permits bankruptcy petition preparers to flout the plain language of section 110(g)(1) and receive filing fees in the form of cashier's checks or money orders payable to the United States Bankruptcy Court.

### 3. No Exceptions to Section 110(g)(1)

Section 110(g)(1), which was intended to prevent bankruptcy petition preparers from trafficking in filing fees, prohibits bankruptcy petition preparers from handling any funds that constitute court fees. There are no exceptions to section 110(g)(1). The court's interpretation of section 110(g)(1) does not conflict with any other section of the Bankruptcy Code, or with any important state or federal interest; nor is a contrary view suggested by the legislative history. We the People has not articulated any significant reason why Congress would have intended, or any policy reason that would compel, an exception under section 110(g)(1) permitting bankruptcy petition preparers to collect and

receive cashier's checks or money orders payable to the bankruptcy court for filing fees.

In its defense, We the People points to the undisputed fact that the bankruptcy petition and filing fee were delivered to the court, and the bankruptcy petition was timely filed in this case in accordance with the Debtor's instructions. As in *Doser* and *Green*, the question is not whether We the People is guilty of misconduct or negligence in the filing of Debtor's bankruptcy petition. The issue is whether We the People's business practice of receiving court filing fees from debtors in the form of a cashier's check or money order payable to the United States Bankruptcy Court violates section 110(g)(1). The court concludes that section 110(g)(1) prohibits such a practice, and that We the People violated section 110(g)(1) in this case.

### 4. Imposition of Fines

 Section 110(g)(2) requires the court to levy a penalty of up to $500 upon finding that a bankruptcy petition preparer has violated section 110(g)(1). 11 U.S.C. § 110(g)(2). The amount of the fine, however, is within the discretion of the court. The imposition of a fine is appropriate to deter future illegal conduct on the part of a bankruptcy petition preparer. *See In re Ali*, 230 B.R. 477, 482 (Bankr.E.D.N.Y.1999). Because this case presented a good faith question regarding the construction of section 110(g)(1), the court limits the amount of the fine to $50. In the event We the People fails to change its business practice and continues to handle court filing fees in violation of section

es, the schedules and statements may be filed within fifteen days of filing the petition). It may be that Congress, while acknowledging that a BPP could properly be asked to take some of the debtor's pleadings to the Court for filing, simply preferred, in

the exercise of its legislative prerogative, that BPPs not handle filing fees in any form, even if that created a practical problem in the filing of the original bankruptcy petition.
*Id.* at 311.

110(g)(1), the court may impose appropriate and severe sanctions, and an injunction, if necessary. *See Haney,* 284 B.R. at 850; *Alexander,* 284 B.R. at 634; *Doser,* 281 B.R. at 313.

## IV. *CONCLUSION*

The UST's motion is granted, and We the People is assessed a fine of $50 for violation of 11 U.S.C. § 110(g)(1), which shall be payable to the Clerk of the Court not later than 30 days from the date of service of the order granting the motion.

The court will enter an order consistent with this opinion.